# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-487


**RANGER INSURANCE COMPANY**

**VERSUS**

**STATE OF LOUISIANA, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-6668
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**Ezell, Judge, dissents with written reasons.**

     **David F. Hutchins**
     **Assistant District Attorney**
     **Post Office Box 3306**
     **Lafayette, LA   70502-3306**
     **(337) 232-5170**
     **COUNSEL FOR APPELLEE:**
         **State  of Louisiana**

     **Graymond F. Martin**
     **Halpern & Martin, LLC**
     **3900 N. Causeway Blvd.,**
     **One Lakeway Center, Suite 605**
     **Metairie, LA   70002**
     **(504) 835-6705**
     **COUNSEL FOR PLAINTIFF/APPELLANT:**
         **Ranger Insurance Company**

AMY, Judge.

The plaintiff filed these consolidated actions, seeking declarations of nullity of two judgments of bond forfeiture entered by the commissioner of the Fifteenth Judicial District Court. The trial court granted one of the petitions, annulling one of the judgments after a determination that the forfeiture was not supported by adequate evidence. As for the remaining matter, the trial court found that the commissioner lacked authority to issue the judgment of bond forfeiture. However, due to the trial court's determination that the commissioner was acting as a *de facto* officer, the petition for nullity was denied. The plaintiff appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, Ranger Insurance Company, filed petitions for nullity after judgments of bond forfeiture were entered in two criminal matters for which it acted as commercial surety. *See State v. Zamora*, District Court Docket Number 96347, wherein Ranger acted as a surety for an underlying charge of negligent homicide. *See also State v. McClendon*, District Court Docket Number 96142, wherein Ranger acted as a surety for an underlying charge of unauthorized use of a movable. The judgments were entered in March 2003 by the commissioner of the Fifteenth Judicial District Court.[1]

---

[1] The bond forfeiture matter appeared before the commissioner of the Fifteenth Judicial District Court through operation of La.R.S. 13:716(A), which provides, in pertinent part: "The commissioner of the Fifteenth Judicial District Court shall perform such duties as are assigned by the chief judge of the district in accordance with rules which shall be prescribed by the elected judges of the court, not inconsistent herewith or with the constitution and laws of the state." Additionally, Appendix 3 of the District Court Appendices, insofar as it relates to the commissioner of the Fifteenth Judicial District Court, provides that the commissioner, shall:

> Handle such other miscellaneous duties as may be assigned by the Judges, including, but not limited to, receiving the report of the Grand Jury, signing search warrants, arrest warrants, juvenile probable cause affidavits, *forfeiture motions*, transportation writs, and such other orders as may need signing.

Ranger subsequently filed Petitions For Nullity of Judgment in response to the judgments of forfeiture in *Zamora* and *McClendon*. As for *Zamora*, Ranger asserted that the procedural and evidentiary requirements for forfeiture, set forth by La.R.S. 15:85, had not been satisfied and, therefore, the judgment of forfeiture should be annulled. With regard to the judgment of forfeiture in *McClendon*, Ranger questioned whether the notice requirements of La.R.S. 15:85 had been met. In both matters, Ranger alternatively raised the constitutionality of La.R.S. 15:85. Upon the unopposed motion of Ranger, the matters were consolidated.[2]

Following a hearing, the trial court ruled that the petition in the forfeiture judgment rendered in *Zamora* "against Ranger Insurance Company as surety and Juanito Ray Zamora as principal is hereby annulled, set aside and cancelled on grounds that the transcript of the proceeding failed to reflect that the proper evidence was introduced in support of the judgment of forfeiture." With regard to *McClendon*, the trial court denied Ranger's petition, explaining that the commissioner of the Fifteenth Judicial District Court, functioning through La.R.S. 13:716(A) and a rule of court, lacked the authority to enter the judgment of forfeiture. However, it denied the petition for nullity due to the applicability of the *de facto* officer doctrine.

Ranger appeals, assigning the following as error:

1.    The Trial Court erred when it denied the surety a release of all obligations under the bond contract where the state failed to fulfill the statutory requirements of [La.R.S.] 15:85 within a sixty day window from the defendant's nonappearance on November 19, 2002.

2.    The Trial Court erred when it held that the Commissioner for the 15th Judicial District Court, Parish of Lafayette, was acting as a de

---

(Emphasis added.).

[2] *See also Ranger Insurance Company v. State of Louisiana*, 06-488 (La.App. 3 Cir. _/_/06), _ So.2d _.

2

facto officer when he adjudicated a civil matter between persons under private signature and rendered and signed final money judgments.

**Discussion**

*Zamora*

The trial court ruled in favor of Ranger in *Zamora*, finding that the record of the related proceedings did not reflect adequate evidence to support the judgment of forfeiture. The trial court's judgment did not address Ranger's alternative contention that the procedural requirements of La.R.S. 15:85 were not met as notice of the forfeiture was allegedly not mailed within a sixty-day window and, therefore, it was released from all surety obligations under the bond.[3] Ranger again addresses the concern on appeal.

Although the transcript reflects that the trial court expressed reluctance to accept this aspect of Ranger's argument in discussion at the hearing, neither the trial court's reasons for ruling nor its judgment touch upon this issue. The absence from the judgment is crucial as an appellate court reviews only a trial court's judgment, not its reasons for ruling. *See* La.Code Civ.P. art. 2082 (emphasis added.) which provides that an "[a]ppeal is the exercise of the right of a party to have a *judgment* of a trial court revised, modified, set aside, or reversed by an appellate court." *See also Johnson v. Henderson*, 04-1723 (La.App. 4 Cir. 3/16/05), 899 So.2d 626. Additionally, since Ranger prevailed in *Zamora* and the State has not appealed that judgment, Ranger's alternative theory of relief has been rendered moot. Accordingly, we do not address the merits of this argument.

---

[3] La.R.S. 15:85(3)(c) provides that: "Failure to mail proper notice of the signing of the judgment within sixty days after the defendant's failure to appear shall release the sureties of any and all obligations under the bond."

3

*McClendon*

As for *McClendon*, the trial court determined that the commissioner of the Fifteenth Judicial District Court, as an appointed officer and not an elected judge, was without authority to adjudicate the bond forfeiture. This determination was based upon the original jurisdiction of district courts conveyed by La.Const. art. 5, § 16[4] and the supreme court's reasoning as to what constitutes "judicial power"[5] to be exercised solely by elected judges.[6] *See State v. O'Reilly*, 00-2864, 00-2865 (La. 5/15/01), 785 So.2d 768. The trial court concluded that the "essential nature and purpose of a judgment of bond forfeiture is the rendering of a final judgment in a civil matter" and, thus, is a function vested solely in elected judges.[7]

---

[4] Louisiana Constitution Article 5, § 16 provides, in part:

> Section 16. **(A) Original Jurisdiction.** (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.

[5] Louisiana Constitution Article 5, § 1 provides that: "The *judicial power* is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." (Emphasis added.)

[6] Louisiana Constitution Article 5, § 22(A) provides, in part, that: "Except as otherwise provided in this Section, all judges shall be elected."

[7] While this portion of the trial court's ruling is not appealed, we set forth the trial court's reasons for purposes of explanation:

> In *State of Louisiana v. O'Reilly*, 2000-2864 (La. 5/15/01), 785 So2d 768, the Louisiana Supreme Court held that a commissioner could not conduct trials, accept pleas and impose sentences in misdemeanor cases. The Court concluded that this constituted a grant of power to an appointed commissioner to make an ultimate determination in a case. The Court reasoned such a grant of power could not stand because it constituted a "judicial power" as intended by Article V of the Louisiana Constitution which could only be exercised by an elected judge. Therefore, the resolution of this issue turns upon whether the granting of a judgment of bond forfeiture is solely a judicial power.

> The Supreme Court again confronted this issue in *State of Louisiana v. Umezulike*, 2003-1404 (La. 2/25/04), 866 So2d 794. The Court noted the specific language of Article 5, § 1 grants "judicial power," not adjudicative power, to the courts of this state. Therefore, the Court found the proper inquiry to be whether an initial probable cause determination and the issuance of a search warrant was a "judicial power" as intended by the Louisiana Constitution of 1974. The Court stated:

> [W]e find that *Bordelon* and *O'Reilly* are not dispositive where the Louisiana Constitution specifically addresses the function which may be a "judicial power." Although we stand by our decisions in *Bordelon v. O'Reilly* and adopt the pattern of analysis employed in both cases by examining the essential nature and purpose of the function at issue, we decline to base our decision solely on jurisprudential interpretations of judicial power when Article 5 of the Louisiana Constitution specifically addresses the function at hand. *Succession of Lauga*, 624 So.2d 1156, 1166 (La.1993). We must, therefore, examine the basic tenets of the right to privacy as protected by the issuance of a search warrant in pari materia with the constitutional grant of judicial power to determine whether the issuance of a search warrant is solely a judicial power. *Umezulike*, supra at p. 797.

The Court then noted Article 1, Section 5 of the Louisiana Constitution is the basic tenet of the right to privacy and examined that provision in determining that the probable cause determination associated with the issuance of a search warrant is a quasi-judicial function and not solely a judicial power.

Therefore, this Court must determine whether there are basic constitutional tenets, in addition to Article 5, which address the function of rendering a judgment of bond forfeiture and, if so, examine those in pari materia with Article 5 to determine whether the issuance of a judgment of bond forfeiture is solely a judicial power.

Bond forfeitures are basically civil proceedings, although subject to special rules set forth in the Code of Criminal Procedure. *State v. Likens*, et al, 89-1040-89-1043 (3rd Cir. 3/13/91), 5[7]7 So2d 285. Pursuant to La.R.S. 15:85, upon failure of the defendant to appear and answer when called in a criminal proceeding, "on motion of the prosecuting attorney and upon hearing of proper evidence," . . . the judge shall "issue a warrant for the arrest of the person failing to appear and order a judgment decreeing the forfeiture of the bond and against the defendant and his sureties in solido for the full amount of the bond" and thereafter "the court shall sign a written judgment of bond forfeiture". It is clear that the statute contemplates issuance of an arrest warrant and the rendition of a final civil money judgment against the defendant and his sureties. Ranger challenges the authority of the commissioner to render that money judgment.

The grant of judicial power is found in the Constitution of the State of Louisiana of 1974, Article V Section 16(A) which provides:

> Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.

The Court can find no other constitutional tenets implicated in the rendering of a judgment of forfeiture. Therefore, the *Umezulike* analysis is not applicable and this Court must look to *Bordelon* and *O'Reilly* and adopt the pattern of analysis employed in both cases by examining the essential nature and purpose of the function at issue. The essential nature and purpose of a judgment of bond forfeiture is the rendering of a final judgment in a civil matter. Such a function encompasses the original jurisdiction of the district courts as set forth in Article 5 Section 16. As such, and following the analysis in *O'Reilly*, this function is solely a judicial power and may

5

The State has neither appealed nor filed an answer questioning the above determination. As Ranger prevailed in this regard, it does not question this portion of the trial court's reasoning. Rather, Ranger questions the denial of its petition for nullity insofar as the trial court further determined that the judgment of bond forfeiture should not be annulled based upon the *de facto* officer doctrine.

In *O'Reilly*, 785 So.2d 768, the supreme court considered the constitutionality of a portion of a statute, *see* La.R.S. 13:719 repealed by 2002 La. Acts No. 28, § 2, that empowered the judges of the Twenty-Second Judicial District Court to select a commissioner who would have jurisdiction over misdemeanor criminal matters. Finding that portion of the statute unconstitutional, the supreme court addressed the applicability of the *de facto* officer doctrine to the underlying misdemeanor convictions/sentences. The supreme court explained that the *de facto* officer doctrine is one founded on public policy grounds and that it "proclaims that the acts of a *de facto* officer are valid as to third persons and the public *until the officer's title to office is adjudged insufficient.*" *Id.* at 776 (emphasis added). The supreme court explained further that:

> The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.

*Id.* at 777 (quoting *Ryder v. United States*, 515 U.S. 177, 180, 115 S.Ct. 2031, 2034 (1995)). Notably, the *de facto* officer doctrine indicates that "until a de facto officer's

be exercised only by an elected judge pursuant to Article V section 22 of the Louisiana Constitution of 1974.

6

title to the office is attacked directly and held to be invalid, 'the acts of a de facto official are as valid and effectual, when they concern the public or the rights of third parties, as though he were an officer de jure . . . .'" *Id.* (quoting *State v. Stripling*, 354 So.2d 1297, 1300-01 (La.1978)).

In the present case, the trial court reasoned as follows in finding the *de facto* officer doctrine applicable and in the denial of the petition for nullity:

> It should be noted that the judgment rendered in this case arose out of the non-appearance of a defendant for arraignment in a criminal matter. An arraignment is a preliminary proceeding at which an accused is informed of the charges against him. La CCrP art 551. It is a quasi-judicial function which may be performed by a commissioner up to the point at which a defendant indicates a desire to enter a guilty plea. As such, it is a proceeding over which a commissioner may preside. As a corollary to that authority, the commissioner may issue a warrant for the non-appearance of a defendant at such a proceeding. The non-appearance simultaneously triggers the right of the State to move for a judgment of forfeiture of the appearance bond posted on behalf of the non-appearing defendant. See La.RS 15:85. By local rule, as noted above, the commissioner was delegated the authority to grant the State's simultaneous motion.

> > The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office . . . Additionally, while it is generally true that in order for there to be a de facto officer, there must be a de jure office, an exception exists where an office is provided for by an unconstitutional statute and the incumbent, for the sake of public policy and public justice, will be recognized as an officer de facto until the unconstitutionality of the Act has been judicially determined in a direct proceeding for that purpose. Anderson v. Texas, 149 Tex.Crim. 423, 195 S.W.2d 368 (1946). See *O'Reilly*, at p. 777.

> In the instant case, as in *O'Reilly*, the commissioner was not a usurper of an office who was acting without color of right. He was at a minimum a de facto officer sitting pursuant to an apparently valid statute

7

and local rule whose constitutionality had not been attacked directly or declared unconstitutional at the time judgment was rendered. The forfeiture judgment arose out of a proceeding over which the commissioner had authority to preside and as a corollary thereto pursuant to La.RS 15:85(1). Therefore, the de facto officer doctrine applies in this case and the judgment of forfeiture rendered in this matter will not be annulled based upon the commissioner's lack of authority to render the judgment.

Ranger questions the trial court's application of the doctrine and particularly asserts that the commissioner was not acting as a *de facto* judge so as to invoke the doctrine, but was, instead, acting as a *de jure* commissioner who was "simply not authorized by law to take the actions he took."

Having reviewed the record, we conclude that the trial court's application of the *de facto* official doctrine is consistent with the framework set forth by the supreme court in *O'Reilly*, 785 So.2d 768. As in *O'Reilly*, the commissioner entering the judgment of bond forfeiture was not an usurper of office acting without color of right. Rather, like the commissioners in *O'Reilly* who were acting pursuant to then La.R.S. 13:719, the commissioner in the present case held an office created by statute. *See* La.R.S. 13:716(A), which establishes the position of commissioner of the Fifteenth Judicial District Court and instructs that he or she "shall perform such duties as are assigned by the chief judge of the district in accordance with rules which shall be prescribed by the elected judges of the court, not inconsistent herewith or with the constitution and laws of the state." *See also* Appendix 3 of the District Court Appendices purporting to permit the court-appointed commissioner to sign "forfeiture motions." As in *O'Reilly*, at the time of the signing of the judgment at issue, there had been no direct constitutional attack on either the statute or court rule from which the judgment of bond forfeiture devolved.

Ranger's assignment of error further lacks merit insofar as it argues that the commissioner's action in this case was contrary to law, *see* La.R.S. 15:85 which

indicates that "the *judge*" shall "order a judgment decreeing the forfeiture of the bond . . . ." This factor is relevant to the underlying question of whether the commissioner acted permissibly, a question not appealed. Again this circumstance is analogous to the factual background in *O'Reilly,* 785 So.2d 768, in which the commissioner's actions stemmed from a procedure permitted by the face of a statute. Although later found to be invalid, the judgment entered prior to the determination of invalidity was sustained. *Id.*

For the above reasons, we find no error in the trial court's determination that the *de facto* officer doctrine is applicable to the instant matter and that, through its operation, the judgment is maintained.

**DECREE**

For the foregoing reasons, the judgment of the trial court in this consolidated matter is affirmed. *See also Ranger Insurance Company v. State of Louisiana,* 06-488 (La.App. 3 Cir. _/_/06), _ So.2d _. All costs of this appeal are assigned to the appellant, Ranger Insurance Company.

**AFFIRMED.**

9

RANGER INSURANCE COMPANY

VERSUS

STATE OF LOUISIANA, ET AL

EZELL, J. dissenting.

I respectfully disagree with the majority in this matter. Not only would I address Ranger's assignment of error concerning notice in the *Zamora* judgment, but I would also reverse the trial court's judgment finding the commissioner of the Fifteenth Judicial District Court had authority to sign both the *Zamora* and the *McClendon* bond forfeiture judgments.

Although Ranger succeeded in having the *Zamora* judgment nullified, it asks this court to address its alternative contention that the procedural requirements of La.R.S. 15:85 were not met as notice of the forfeiture was allegedly not mailed within a sixty-day window. A finding that the procedural requirements were not met would release the surety of any and all obligations under the bond. La.R.S. 15:85(3). The majority recognizes that neither the trial court's reasons nor its judgment touches upon this issue. Citing La.Code Civ.P. art. 2082, the majority declines to address the merits of the argument. I would address the merits of this issue because it was presented to the trial court and is raised on appeal as an assignment of error.

However, I find that the evidence in the record indicates that there is no merit to this argument which is probably why it was not addressed by the trial court. Silence on an issue raised in the trial court is considered a rejection of that issue. *Mitchell Co. v. Mucavil, Inc.*, 02-381 (La.App. 3 Cir. 10/1/03), 855 So.2d 426.

On February 18, 2003, Zamora failed to appear for a hearing. It was noted that Zamora had failed to appear at a previous hearing and a fugitive warrant and bond forfeiture was in effect. However, no judgment of bond forfeiture had been signed. It was not until after this hearing that a judgment of bond forfeiture was signed on

1

March 19, 2003.  Notice to the parties was mailed within sixty days of the date of the February 18 hearing.  Ranger tries to assert that notice should have been mailed within sixty days of November 19, 2002, when Zamora first failed to appear.  However, the judgment of bond forfeiture was based on Zamora's failure to appear at the February 18 hearing.  As this court held in *State v. Breaux*, 94-1553, 94-1562, (La.App. 3 Cir. 5/31/95), 657 So.2d 371, the State's notice of nonappearance could be sent to the appearance bond surety within sixty days after date the of nonappearance upon which the bail bond forfeiture judgment was based and was not required to be sent within sixty days from when defendants first failed to appear for trial.  Therefore, I find that the evidence indicates that notice was timely.

Regarding the signing of the bond forfeiture judgments by the court commissioner in both cases, La.R.S. 15:85(2) provides that "the court shall sign a written judgment of bond forfeiture."  In this case the commissioner for the Fifteenth Judicial District Court signed both judgments of bond forfeiture.  The position of commissioner was created by La.R.S. 13:714.  Regarding the commissioner's authority, La.R.S. 13:716(A)(emphasis supplied) provides that:

> The commissioner of the Fifteenth Judicial District Court shall perform such duties as are assigned by the chief judge of the district in accordance with rules which shall be prescribed by the elected judges of the court, **not inconsistent herewith or with the constitution and laws of the state**.

Louisiana Revised Statutes 13:716(B)(4)(a)(emphasis supplied) further provides:

> In civil cases, the commissioner may be designated and assigned to conduct hearings, including evidentiary hearings, and trials, except motions for injunctive relief and temporary restraining orders.  In furtherance of the above, civil trials and hearings by the commissioner shall be governed by the following rules:
>
> The commissioner may conduct any or all proceedings on any matter pending before the court and order the entry of judgment in any case where the parties consent to the matter being heard and adjudicated by the commissioner.  **Each judgment so entered shall be signed by a judge of the district**.  The clerk of court, at the time the action is filed, shall notify the parties of their right to consent to the exercise of such jurisdiction.  The decision of the parties shall be communicated to the clerk.  An aggrieved party may appeal a judgment of the commissioner rendered pursuant to the authority of this Subsection in the same manner as an appeal from any other judgment of a district court.

2

The majority cites the Louisiana Supreme Court case of *State v. O'Reilly*, 00-2864, 00-2865 (La. 5/15/01), 785 So.2d 768, which discusses the application of the *de facto* official doctrine. The supreme court in *O'Reilly*, 785 So.2d at 777( *quoting Ryder v. United States*, 515 U.S. 177, 180, 115 S.Ct. 2031, 2034 (1995) (internal citations omitted)), explained the application of the doctrine as follows:

> The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.

In this case we are not dealing with a *de facto* officer. The commissioner is a validly appointed position under state law. There is no argument about the constitutionality of the commissioner to act. The law simply does not provide the commissioner with the authority to sign judgments. There is no provision in the law giving the commissioner authority to sign the judgment. It is just the opposite. Aside from La.Code Civ.P. art. 1911 providing that every final judgment shall be signed by a judgment, La.R.S. 13:716 specifically provides that a judge of the district court shall sign a civil judgment. The commissioner has the no authority to sign judgments under the law. Simply put, the commissioner exceeded the authority conferred on him by law.

In *Bankers Ins. Co. v. State*, 32,460 (La.App. 2 Cir. 10/27/99), 743 So.2d 870, the second circuit recognized that a judgment of bond forfeiture must be signed by the judge who ordered the judgment. As noted by La.R.S. 15:85(1), it is the **judge**, not the commissioner, who orders the judgment of bond forfeiture. While La.R.S. 13:716 gives the commissioner the authority to hold hearings and order the entry of judgment when the parties consent, the judge must still sign the judgment.

I also do not find that the local rules of the Fifteenth Judicial District Court confer any authority upon the commissioner to sign judgments. Local Rules for the Fifteenth Judicial District Court Parish of Lafayette provide that the commissioner can sign "forfeiture motions." It does not provide that he can sign forfeiture judgments.

3

I think it is clear that the commissioner exceeded his authority in signing the judgments of bond forfeiture. In *Bankers*, 743 So.2d 870, the second circuit found that a judgment of bond forfeiture signed by a judge other than the one who ordered the judgment was a relative nullity pursuant to La.Code Civ.P. art 2004. The second circuit noted that the term "ill practice" was not limited to cases of actual fraud or wrongdoing, but broadly defined to encompass all situations in which a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right. The second circuit further noted that a judgment will be annulled for ill practices only when the circumstances under which it was rendered show the deprivation of legal rights of the litigant who seeks relief, and when enforcement of the judgment would be unconscionable and inequitable.

In the present cases the absence of a judge signing the judgment of bond forfeiture is a fatal defect. There have been cases in which the judge who signed the judgment was not the judge who heard the case. Cases have held this is a fatal defect and remanded the case to the trial court to issue a proper and valid judgment once the present judgment is annulled. *See Employers Nat. Ins. Co. v. Workers' Comp. Second Injury Bd.*, 95-1756 (La.App. 1 Cir. 4/4/96), 672 So.2d 309; and *Louisiana Paving Co., Inc. v. St. Charles Parish Pub. Schs.*, 593 So.2d 892 (La.App. 5 Cir. 1992). In this case, the fact that the commissioner signed the judgment and had no authority is a deprivation of legal rights that Ranger is entitled to under La.R.S. 15:85, enforcement of which would be unconscionable and inequitable. Therefore, I find that the judgments should be annulled and the case remanded for the issuance of a valid judgment.

I also note that the majority states that Ranger's assignment of error lacks merit because Ranger did not raise the issue of whether the commissioner acted permissibly. I respectfully disagree as I find that this is precisely the issue that Ranger has raised.

4